# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

**CHRISTOPHER OLEN BAKER,**          )
                                     )
                **Plaintiff,**   )
                                     )
                                     )
**vs.**                              )    **Case No. CIV-13-140-JHP-SPS**
                                     )
**TIM WILKINSON,** *et al.,*         )
                                     )
                **Defendants.**  )

## OPINION AND ORDER

This matter before the Court on Defendants' (Wilkinson, Miller, Castro, and Larimer) Motion to Dismiss (Dkt. # 28). On September 12, 2013, the Plaintiff filed a response to said motion (Dkt. # 32). On October 14, 2013, the Defendants filed a reply (Dkt. # 39). For the reasons set forth herein, the Court hereby grants Defendants' motions to dismiss.

### *Procedural Background*

Plaintiff, an inmate in the Oklahoma Department of Corrections (hereinafter "DOC") currently housed at the Davis Correctional Facility, in Holdenville, Oklahoma, brought this action pursuant to 42 U.S.C. § 1983, seeking reinstatement of pre 12/01/12 medications, examination by a neurologist and access to a medical doctor to address his medical issues (Dkt. # 1). Plaintiff alleges a violation of his Eighth Amendment rights claiming deliberate indifference and medical malfeasance. Plaintiff's chief complaint is that he is no longer allowed to see a medical doctor. Rather, his medical issues are handled by a Board Certified,

Advanced Registered Nurse Practitioner. Plaintiff disagrees with the medications he has been provided, claiming the defendants are trying to kill him. Plaintiff complains following a traumatic experience with a CCA officer in October, 2012, he experienced an increase in seizure frequency and intensity. In December 2012, Plaintiff states he went for his six month medication renewal. At that time, Plaintiff was seen by Defendant "Nurse Castro who informed him he would no longer be seen by Dr. Reiheld, only her." Dkt. # 1, at p. 4. On February 13, 2013, Plaintiff was again seen by Nurse Castro and he was informed that "she would be removing him from his medications to try him on a new, untested, or authorized medication, and that he would be locked in a medical cell for transition." *Id.* According to Plaintiff, Nurse Castro completely ignored Dr. Reiheld's recommendations concerning his medications. *Id.* On February 13, 2013, Plaintiff alleges he had a seizure in which he ceased breathing for over four and ½ minutes. Plaintiff claims he had an allergic reaction to the new medication. Thereafter, Plaintiff asserts he was "locked unobserved in medical observation cell 2/25/13 and injected with a substance that induced series of grandmal siezures (sic), authorized by Mr. Latimer (sic), without medical authorization of qualified Dr. Neither the injection or the siezures (sic) were logged by medical staff." *Id*. Plaintiff claims he attempted an informal resolution of his grievance with Dr. Reiheld and he thought he was going to be returned to his previous level of control medications; however, this did not occur. Plaintiff asserts Defendants Latimer, Castro, and other assorted medical staff continue to thwart Dr. Reinheld's efforts to address plaintiff's health and safety issues and concerns.

2

Plaintiff requests this Court reinstate his pre 12/01/12 meds, order an examination by a neurologist and grant him access to a medical doctor.

On June 19, 2013, the magistrate judge stayed these proceedings and ordered the preparation of a special report, pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). On August 19, 2013, the special report was filed along with the Defendants' Motion to Dismiss. On September 12, 2013, the Plaintiff filed his response to which the defendants filed their reply.

*Legal Analysis*

*A. Standard for dismissal*

Title 42 U.S.C. § 1983 provides a federal remedy against any person who, acting under color of state law, deprives another of his federal rights. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Two prima facie elements must be alleged in a 1983 complaint: 1) the defendant deprived the plaintiff of a right secured by the 'Constitution and laws' of the United States and 2) the defendant acted 'under color of law.' *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Federal Rule of Civil Procedure 8(a)(2) sets up a liberal system of notice pleading in federal courts requiring only that the complaint include a short and plain statement of the claim. *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008).

A civil rights claim should be dismissed only where it appears that the plaintiff could prove no set of facts entitling him to relief. *Meade v. Grubbs*, 841 F.2d 1512, 1516 (10th Cir. 1988) (citing *Owens v. Rush*, 654 F.2d 1370, 1378-79 (10th Cir. 1981)). In reviewing a claim for dismissal under Fed.R.Civ.P. 12(b)(6), all of the factual allegations in the complaint must

be presumed true and construed in the light most favorable to the plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). A *pro se* litigant's pleadings are held to less stringent standards than those drafted by lawyers and the court must construe them liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). At the same time, the district court can not assume the role of advocate for a *pro se* litigant and should dismiss claims that are supported by vague or conclusory allegations. *Hall*, 935 F.2d, at 1110. Where a court considers matters outside the pleadings, such as those contained within a special report, a Rule 12(b)(6) motion to dismiss "must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

## B.  Standard for summary judgment

Summary judgment is appropriate where there is no dispute of material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56. When presented with a summary judgment motion, this Court must determine whether there "are any genuine factual issues that properly can be resolved only by the finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When evaluating a motion for summary judgment, this Court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). The party opposing summary judgment, however, "may not rest upon mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477

4

U.S. at 248, 106 S.Ct. at 2510 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### C.  *Failure to exhaust administrative remedies*

The Prison Litigation Reform Act of 1996 ("PLRA") provides in part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed.  *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n. 1 (10th Cir. 2001).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).  In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

According to the special report submitted herein, it is clear the plaintiff did not properly exhaust his administrative remedies.  The plaintiff was incarcerated at the Davis Correctional Facility, in Holdenville, Oklahoma.  The Davis facility is a medium-security/maximum-security private prison run by the Corrections Corporation of America, Inc. ("CCA").  CCA has entered into a contract with the Oklahoma Department of Corrections ("DOC") to house inmates for

DOC. Two DOC employees are regularly at the Davis facility as "contract monitors" for DOC. Dkt. # 39-2.

Since September 2012, the DOC grievance policy, OP-090124, has been the only grievance policy available to inmates housed at Davis by DOC. *See*, Dkt. # 27-2. This policy sets out a step-by-step process an inmate must follow in order to exhaust his administrative remedies. The policy provides that an offender must first try to resolve his complaint informally by talking with appropriate staff within three days of the incident. *Id*., at p. 6.[1] If not resolved, the inmate must submit a "Request to Staff" stating "completely but briefly the problem." *Id*. This request must be submitted within seven calendar days of the incident. *Id*., at p. 7. If the complaint is not resolved informally, the offender may obtain and complete the "Offender Grievance Report Form" and submit it along with the "Request to Staff" form used in the informal resolution process with the response, to the reviewing authority or the facility correctional health services administrator. *Id*. DOC policy requires this grievance form to be submitted "within 15 calendar days of the incident, or the date of the response to the "Request to Staff" form, whichever is later." *Id*., at p. 8. Davis is responsible, under this policy, to respond "to grievances on matters occurring during the offender's incarceration" and offenders "may file grievances at private prisons with the facility administrator concerning their assignment at the private prison." *Id*. The last step in the grievance policy requires an inmate to make a final appeal to the Administrative Review Authority or the

---

[1] Page numbers reference the CM/ECF page number at the top of the document cited as opposed to the page number of the grievance policy.

Chief Medical Officer within 15 calendar days of receipt of the reviewing authority's response or any amended response. *Id*., at p. 11. For final appeals of medical issues, the DOC has a Chief Medical Officer and medical office administrative review authority that provides the final level of appeal for inmates filing grievances about medical issues.

According to the special report, Plaintiff filed four grievances between October 2012 (the date of the first allegation in his Complaint) and April 1, 2013 (the date this lawsuit was filed). On April 21, 2013, Plaintiff submitted an additional grievance. While the majority of those grievances were returned for failure to attempt an informal resolution prior to submitting his formal grievance, Plaintiff did not appeal any of the decisions to return his grievances. *See*, Dkt. # 27, at pp. 5-9, Grievance Nos. 2013-1001-00045-G, 2013-1001-0046-G, 2013-1001-00089-G, and 2013-1001-00114-G. Following the filing of one of his grievances, the Plaintiff was seen by Dr. Reiheld and his grievance was returned since the matter had been resolved. *See*, Dkt. # 27-4, at pp. 10-15, Grievance No. 2013-1001-00050-G. The grievance submitted on April 21, 2013, was initially returned for failure to complete the grievance form in its entirety and for failure to resolve the complaint informally. Plaintiff was given an opportunity to resubmit the grievance and on May 3, 2013, Plaintiff resubmitted this grievance. On May 10, 2013, the reviewing authority denied the request for the following reasons:

> Offender Baker requests that his KOP (Keep On Person) medicine status be restored and delete the unfounded accusation of "Hording" from his file.
>
> After an investigation of the matter it was determined by Ray Larimer, Clinical Supervisor that multiple meds were found in Offender Baker's cell indicating

> that the offender was not taking his meds properly. Offender Baker will need
> to submit a request to medical services to discuss this with the provider.

*See*, Dkt. # 27-4, at pp. 20- 22 and 24-27. Although the response advised Plaintiff that he had the right to appeal, where to file his appeal, the DOC form to use, and the time limit within which the appeal had to be filed, Plaintiff never filed any appeal from this response.

Plaintiff asks this Court to excuse his exhaustion because any administrative remedies would be futile. Plaintiff does not, however, explain why he can not obtain relief thru the inmate grievance procedures. Rather, plaintiff simply states "there are no administrative remedies for the resolution of the issues" contained in his complaint.[2] The special report, however, clearly establishes that there are written grievance policies and procedures which must be followed in order to resolve the types of issues contained in Plaintiff's complaint. Furthermore, in his objection to the special report filed on September 25, 2013, Plaintiff states that he was sent to the Holdenville Hospital to have a CAT scan of his neck since the filing of this lawsuit which appears to be one of the requests he had made in Grievance No. 2013-1001-00046-G filed in February, 2013. As a result, this Court finds Plaintiff did not exhaust the available administrative remedies prior to filing this lawsuit. Therefore, pursuant to 42 U.S.C. § 1997e(a), this action must be dismissed.

## D. Eighth Amendment Claims

---

[2] On January 24, 2014, Plaintiff filed a Supplement to his motion for temporary restraining order (Dkt. # 50) and a Supplement or Sur-reply to Defendants' Motion to Dismiss (Dkt. # 51). Again Plaintiff informs the court that he has not been seen by Dr. Sanders or a neurologist. While not considering whether Plaintiff has fully exhausted his administrative remedies regarding the grievances attached to those pleadings, the court would note that those grievances do not predate the filing of this action, and therefore, do not demonstrate that the grievance procedures are futile. The grievances attached to these latest pleadings were responded to and even though the response changed due to an apparent misunderstanding by the person responding to the grievance, Plaintiff still has a right to appeal any decision denying his grievance to the Administrative Review Authority and/or the Chief Medical Officer as detailed herein.

In order to state a claim under § 1983, a plaintiff must 1) allege a violation of a right secured by the Constitution or laws of the United States and 2) demonstrate that the alleged deprivation was committed by a person acting under color of law. *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009). The Eighth Amendment's prohibition against cruel and unusual punishment imposes minimum requirements on prison officials in the treatment received by inmates. Not every injury suffered by a prisoner at the hands of another, however, translates into constitutional liability for prison officials. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). In order for a violation of a convicted prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner "must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." *Wilson v. Seiter*, 501 U.S. 294, 297-299, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). *See also*, *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 85, 291, 50 L.Ed.2d 251 (1976). An Eighth Amendment claim has both an objective and subjective component. *Farmer*, *supra*. The objective component requires proof that the condition was "sufficiently serious." *Id*. To meet the objective component, "extreme deprivations are required . . . ." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). The subjective component is met by a prison official who is deliberately indifferent to an inmate's health or safety. *Wilson v. Seiter*, 501 U.S. at 297. "[A]llegations of 'inadvertent failure to provide adequate medical care,' or of a 'negligent . . . diagnos[is],' simply fail to establish the requisite culpable state of mind." *Id.* (citations omitted) Furthermore,

9

> . . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle v. Gamble*, 429 U.S. at 106.

To show deliberate indifference to his serious medical needs the plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Medical records of sick calls, examinations, diagnoses and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

According to the special report filed herein, Plaintiff was seen by medical facility staff at least twenty-seven times between October 4, 2012 and March 14, 2013. While Plaintiff disagrees with the medication changes that have recently been made, such changes do not amount to deliberate indifference in violation of the Eighth Amendment of the Constitution. Furthermore, there is no constitutional right to be seen only by a licensed physician. Although Plaintiff filed an objection to the special report on September 25, 2013, he does not deny that he has been seen by medical staff. Rather, his objection is that the facility did not

fully investigate his allegations when completing the Special Report. In particular, he complains because the special report does not contain his medical records all the way back to 2000. The allegations made in plaintiff's complaint, however, deal with whether or not the defendants were deliberately indifferent to his medical needs between October 2012 and the filing of his lawsuit on April 1, 2013. He asks the court to "[r]ienstate (sic) pre 12/01/12 meds"; to order an examination by a neurologist and to require access to a medical doctor at DCF. *See*, Dkt. # 1, at p. 10. *See also*, Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. # 37 and Supplement to Declaration in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. # 47 (in which Plaintiff states "[o]n September 6, 2013, [he] was taken to the Holdenville General Hospital for a CT scan.") Plaintiff attaches a radiology report which indicates he may be suffering from degenerative disc disease and the radiologist recommends "MRI for further evaluation *if clinically indicated*." (Emphasis added) Plaintiff states in his declaration that the radiologist "recommended that [he] be subjected to an MRI." Dkt. # 47, at p. 2. The allegations in his Motion and Supplemental Declaration go way beyond the allegations made in his Complaint. Dkt. # 1.

Furthermore, while Plaintiff complains that his files could have been altered, his complaints are conclusory and he supports his allegations with no facts which would establish deliberate indifference to his serious medical needs. Plaintiff does not allege that he suffered substantial harm from the change in his medications. Rather, he indicates that his seizures have only recently gotten worse and he claims to have had "an allergic reaction

11

to new medication."[3] Plaintiff states following this incident he was placed in a medical observation cell. The Request to Staff attached to Plaintiff's Motion for Expansion of the Record (Dkt. # 42), indicate Plaintiff has been offered several different seizure medications and he refuses to try them. Further, this document indicates Plaintiff's medical record was reviewed by Dr. Sanders, who agrees with the treatment provided. *Id*., at pp. 4-5. Plaintiff's objection to the special report, as well as the continuing complaints regarding daily medical care while in prison and his continued requests that this Court order a complete medical exam and/or psychiatric evaluation to be completed in order that it can be included as an addendum to the special report (*see*, Dkt. # 33, at p. 5, ¶ 15), establish Plaintiff is operating under a mistaken impression of the purpose of this lawsuit. While claims of inadequate medical treatment can give rise to federal protections under § 1983, prison officials must of necessity be vested with a wide degree of discretion in determining the nature and character of medical treatment to be afforded prisoners. The function of this Court is not to micro manage the day to day medical operations of the prison or to interfere with the conduct of prison officials in carrying out their medical obligations to inmates. Where a inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim simply does not exist. *Wilson v. Seiter*, *supra*. Viewing the facts in the light most favorable to Plaintiff, this Court finds that Plaintiff has not pled sufficient facts to state a claim that any of the named Defendants were "deliberately indifferent" to his serious medical needs. Rather, his complaint indicates he has been seen by medical personnel. In particular, on

---

[3]Plaintiff does not support this conclusory allegation with any evidence.

February 13, 2013,when he had a seizure and claims to have stopped breathing for over four and a half (4 ½ minutes), medical personal responded and apparently revived him. Because Plaintiff has failed to provide any evidence from which the finder of fact could conclude that Defendants Miller, Castro, Larimer or Wilkinson were deliberately indifferent to his serious medical needs, this Court finds, even if the grievance procedures were futile, Plaintiff has failed to state a claim for relief.

Accordingly, this Court hereby grants Defendants motion to dismiss for failure to exhaust (Dkt. # 28). Plaintiff's Motions for: (1) Temporary Restraining Order and Preliminary Injunction (Dkt. # 37); (2) to Supplement titled "Motion for Expansion of Record" (Dkt. # 42); and (3) Motion to Produce Contract (Dkt. # 44) are **DENIED**.

IT IS SO ORDERED on this  28th  day of January, 2014.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma